# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:07CV138-R

| | |
|---|---|
| **SCHRADER-BRIDGEPORT INTERNATIONAL, INC.** | ) ) ) |
| Plaintiff, | ) **MEMORANDUM AND RECOMMENDATION** ) |
| vs. | ) ) |
| **ARVINMERITOR, INC.,** | ) ) |
| Defendant. | ) ) ) |

**THIS MATTER** is before the Court on the Defendant's "Motion for Judgment on the Pleadings" (document #17) and "Memorandum in Support ..." (document #18), both filed August 28, 2007; and the Plaintiff's "Memorandum in Opposition ..." (document #20) filed November 7, 2007.

On November 26, 2007, the Defendant filed its "Reply ..." (document #21). On December 7, 2007, and with prior leave of Court, the Plaintiff filed its "Sur-reply ..." (document #24).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendant's Motion for Judgment on the Pleadings be <u>denied</u>, as discussed below. The Court will also issue a separate Case Management and Pretrial Order and an Order for Mediated Settlement Conference.[1]

---

[1] The undersigned finds that this matter is appropriate for early mediation, and will appoint Gary S. Hemric, Esquire, as mediator to conduct a mediated settlement conference on or before March 30, 2008.

# I. PROCEDURAL AND FACTUAL BACKGROUND

This action arises from a "Stock Purchase Agreement" ("the Agreement") entered into on February 16, 1995, by KSCH Holdings, Inc., predecessor in interest to the Plaintiff, Schrader-Bridgeport, International, Inc., a Delaware corporation, and Arvin Industries, Inc., predecessor in interest to the Defendant, ArvinMeritor, Inc., an Indiana corporation. Pursuant to the Agreement, ArvinMeritor, Inc. sold 100% of the outstanding capital stock of its wholly-owned subsidiary, Schrader Automotive Inc., to KSCH.[2]

One of the assets that the Plaintiff acquired through the sale was a leasehold interest in a manufacturing facility located in Monroe, North Carolina (the "Monroe Facility"). Prior to the execution of the Agreement, the Defendant disclosed to the Plaintiff certain environmental liabilities, including groundwater contamination at the Monroe Facility. The Defendant also disclosed that it had received notices of violation from the State of North Carolina in October 1991 (petroleum contamination) and February 1992 (chlorinated solvent contamination), that an environmental consultant had devised a remediation system, and that remediation was already in progress at the site.

Taking the allegations of the Complaint as true, the parties agreed that after the closing of the stock sale, the Defendant would continue to be responsible for all of Schrader Automotive's pre-existing environmental clean-up expenses, including remediation costs at the Monroe Facility. To that end, Section 6.10(b) of the Agreement states:

> <u>Remediation of Known Environmental Violations</u>. Seller agrees that it shall assume, at its sole expense, the responsibility for (I) remediating or bringing into compliance

---

[2] Some time after the Stock Purchase Agreement was executed, KSCH merged with and into Schrader Automotive Inc. with the Plaintiff Schrader-Bridgeport, International, Inc. emerging as the surviving corporation. Similarly, Arvin Industries, Inc. later merged with Meritor Automotive, Inc., becoming Defendant ArvinMeritor, Inc. For the purposes of this Memorandum and Recommendation, subsequent references to "Plaintiff" and "Defendant" will include the present parties, as well as their respective predecessors in interest.

with all Environmental Regulations, all violations of Environmental Regulations by the Company or any Subsidiary known by Seller, the Company or any Subsidiary as of the Closing (referred to in this Section as "Known Environmental Violations"), including without limitation those Environmental Violations described on Schedule 4.8....

The parties agree that the environmental contamination at the Monroe Facility was among the "Known Environmental Violations" listed in Schedule 4.8.

The Agreement also provided in Sections 8.1(f) and (g):

<u>Indemnification by Seller</u>.  Seller hereby agrees that it will indemnify, defend and hold harmless Holdings and Purchasers, the Company or any Subsidiary from and against any and all Loss incurred by any of them arising out of ... (f) the Known Environmental Violations described in Section 6.10(b); and (g) (I) Environmental Regulations in effect on or prior to the Closing Date, if such Loss also arises out of facts, conditions or events occurring or existing on or prior to the Closing Date that relate to the Real Property, the Leased Real Property or the operations of the Company or the Subsidiaries.…

Section 8.4(a), entitled "<u>Notice of Claim</u>," provides (emphasis added):

<u>If any matter shall arise which, in the opinion of the Indemnified Party constitutes or may give rise to a Loss subject to indemnification by the Indemnifying Party as provided herein (an "Indemnified Claim")</u>, the Indemnified Party shall give prompt written notice (a "Notice of Claim") of such Indemnity Claim to the Indemnifying Party setting forth the relevant facts and circumstances of such Indemnity Claim in reasonable detail and the amount of indemnity  (to the extent the Indemnified Party can determine such amount) sought from the Indemnifying Party with respect thereto. <u>The Indemnified Party's failure to notify the Indemnifying Party of any such matter within the time frame specified [in Section 8.4(c) below] shall not release the Indemnifying Party, in whole or in part, from its obligations hereunder except to the extent that the Indemnifying Party's ability to defend such claim is prejudiced thereby</u>.

Section 8.4(c) set time limitations for giving the notice required by Section 8.4(a), as follows (emphasis added):

Seller shall not have any liability for any Loss otherwise indemnifiable by Seller hereunder with respect to which a Notice of Claim has not been given to Seller prior

3

to 30 months after the Closing Date,[3] except with respect to … (ii) an Indemnity Claim under Sections 8.1(f) or (g) pertaining to certain environmental matters <u>outside the U.S.</u>, in which case the Notice of Claim must be given ... no later than the earlier of (A) <u>10 years after the Closing Date</u> or (B) <u>60 days after the expiration of the applicable statute of limitations with respect to such matters</u>, (iii) an Indemnity Claim under Section 8.1(f) or (g) pertaining to environmental matters <u>in the U.S.</u>, in which case the Notice of Claim must have been given no later than 60 days after the expiration of the applicable statute of limitations <u>with respect to such matters</u>....

Finally, concerning the contents of the Agreement, the signature page reflects that each party signed it "under seal."

The Plaintiff alleges that from March 1995 through October 2005, it paid over 143 separate invoices for remediating the solvent contamination, and more than 50 separate invoices for remediating the petroleum contamination, for a total of $697,120. The State is requiring remediation to continue, and the Plaintiff estimates that future expenses between $600,000 and $1,400,000 will be incurred, primarily dependent upon the length of time that the remedial system must remain in operation.

On February 28, 2006, in a letter outlining its claims, the Plaintiff demanded that the Defendant indemnify the Plaintiff for past remediation costs and immediately assume responsibility for all ongoing clean-up costs at the Monroe Facility.

On March 30, 2007, and after the Defendant refused to indemnify the Plaintiff for past costs or assume responsibility for future expenses, the Plaintiff filed this action, seeking damages pursuant to claims for breach of contract and "contractual indemnification," as well as a declaratory judgment that the Plaintiff is entitled to ongoing indemnification under the terms of the Agreement.

---

[3]The parties have not identified a "Closing Date" apart from the date that the Agreement was executed, February 16, 1995. Moreover, in its briefs, the Defendant implies that the Agreement was closed on the same date it was executed, that is, the Defendant argues that the purportedly applicable three-year statute of limitations expired on "February 16, 1998." Accordingly, for these purposes, the undersigned has assumed that the sale was closed on February 16, 1995.

On August 28, 2007, the Defendant filed its Motion for Judgment on the Pleadings, contending that Section 8.4(a), requiring the Plaintiff to serve a timely Notice of Claim "[i]f any matter ... ar[o]se which m[ight] give rise to a Loss subject to indemnification," applied to the contamination at the Monroe Facility, notwithstanding the fact that the parties acknowledged its existence at the time of the stock sale and agreed that the Defendant would indemnify the Plaintiff for resulting clean-up costs. The Defendant further argues that the Plaintiff's notice as contained in its February 28, 2006 letter was untimely because the "applicable statute of limitations" referenced in Section 8.4(c) was the three-year statute of limitation for the Plaintiff to file a property damage claim against the Defendant, which expired on February 16, 1998.

Concerning its burden to prove that it was prejudiced by the Plaintiff's allegedly late notice, the Defendant states generally in its briefs that it "has been prejudiced because it has been precluded from taking an active role in the defense of those claims and remediation decisions," document #18 at 11, and that "it is always better to control costs on the front end rather than the back end." Document #21 at 13.

In its Response, the Plaintiff points out that the Defendant has had notice of the contamination at the Monroe Facility and the expense involved in clean-up since before the stock sale, arguing by implication that Section 8.4(a) applied only to matters that "arose" after the sale and that a formal "Notice of Claim" concerning the Monroe Facility was unnecessary. In the event that a formal notice was required even as to this "Known Environmental Violation," the Plaintiff argues that its February 2006 letter was timely under the terms of Section 8.4(c), and that in any event, the Defendant was not prejudiced by the timing of the Plaintiff's demand.

The Plaintiff presents several alternative theories supporting its position that its notice of

5

claim, if required, was timely, including that "the applicable statute of limitations with respect to such matters" could refer to any claim by the State (which the parties agree would not be subject to a statute of limitation), the ten-year statute of limitation for an action to enforce a sealed instrument (N.C. Gen. Stat. § 1-47(2)), the three-year statute of limitation for a breach of contract claim (N.C. Gen. Stat. § 1-52(1)), or the statute of limitation governing any environmental tort claim a third party might bring, such as a claim for wrongful death allegedly caused by the contamination.

The Plaintiff contends in its Sur-reply that the remediation program that the Defendant developed and implemented remains in place as of this date and has never deviated in function or cost from the remediation system which the Defendant itself initiated and thereafter has at all relevant times been aware.

The Defendant's Motion has been briefed as set forth above and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

Although, a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is separate and distinct from a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the distinction is one without a difference [because federal courts] apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Accord Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) ("viewing the Defendants' motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal de novo and

6

in doing so apply the standard for a Rule 12(b)(6) motion").

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

**B. Notice Requirement and Statutes of Limitations**

Concerning construction of contracts, "[t]he rule is that when the language of a contract is

plain and unambiguous, construction of the language is a matter of law for the court." Mountain Federal Land Bank v. First Union Nat. Bank of North Carolina, 98 N.C.App. 195, 200, 390 S.E.2d 679, 682 (1990), citing Clear Fir Sales Co. v. Carolina Plywood Distributors, Inc., 13 N.C.App. 429, 430, 185 S.E.2d 737, 738 (1972). "In determining the nature of a contract, [the court] give[s] the contract language the construction that the parties intended at the time of formation, as discerned from their writings and actions." Id., citing Walker v. Goodson Farms, Inc., 90 N.C.App. 478, 486, 369 S.E.2d 122, 126, review denied, 323 N.C. 370, 373 S.E.2d 556 (1988).

However, where contract language is not "plain and unambiguous," the meaning of its terms is a question for the jury. Dockery v. Quality Plastic Custom Molding, Inc., 144 N.C. App. 419, 422, 547 S.E.2d 850, 852 (2001). Accord Dept. of Transportation v. Idol, 114 N.C.App. 98, 100, 440 S.E.2d 863, 864 (1994). "Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties." Glover v. First Union National Bank, 109 N.C.App. 451, 456, 428 S.E.2d 206, 209 (1993). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." Dockery, 144 N.C. App. at 422, 547 S.E.2d at 852, citing St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc., 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988).

Applying these legal principles to the facts in this case, the undersigned finds that the operative language in both Sections 8.4(a) and (c) of the Agreement is ambiguous, in that in each instance the disputed language is susceptible to either of the contradictory interpretations asserted by the parties. Indeed, Section 8.4(a), which requires a formal Notice of Claim, begins with the phrase "[i]f any matter shall arise which, in the opinion of the [Plaintiff] constitutes or may give rise to a Loss subject to indemnification" (emphasis added), which supports the Plaintiff's contention that

8

the notice requirement did not apply to then-existing matters which the parties had expressly agreed <u>were</u> subject to indemnification. The same sentence continues, however, that "the [Plaintiff] shall give prompt written notice (a "Notice of Claim") of such Indemnity Claim to the [Defendant] <u>setting forth the relevant facts and circumstances of such Indemnity Claim in reasonable detail and the amount of indemnity</u> ... sought from the Indemnifying Party with respect thereto" (emphasis added). This phrase supports the Defendant's primary contention that although the parties generally agreed that it was responsible for clean-up costs at the Monroe Facility, the Defendant's obligation to pay those costs was not triggered until it received notice of the actual expenses the Plaintiff was incurring. In other words, Section 8.4(a) could be read to require the Plaintiff to forward each invoice to the Defendant as it was received by the Plaintiff, or to support the Plaintiff's contrary contention that remediation about which the Defendant was already fully aware was exempted from this requirement.

Similarly, the Section 8.4(c)(iii) phrase "pertaining to environmental matters in the U.S., in which case the Notice of Claim must have been given no later than 60 days after the expiration of the applicable statute of limitations with respect to such matters" is ambiguous as to which "environmental matters" the parties intended to trigger the "applicable statute of limitations." Although a reasonable jury could conclude that "environmental matters" was, as the Defendant argues, a claim brought by the Plaintiff against the Defendant for environmental damage to the subject property, it also could conclude, as the Plaintiff maintains, that the same phrase encompassed a variety of potential claims, including claims by the State or another third party against the Plaintiff, as well as breach of contract/sealed instrument claims brought by the Plaintiff against the Defendant.

The Defendant's argument that it never intended to be liable indefinitely for any

9

environmental claim that the State might bring or for a presently unknown third party's environmental tort claim is refuted by the fact that Section 8.4(c)(ii) "pertaining to certain environmental matters <u>outside</u> the U.S." (emphasis added), required that the Notice of Claim be given "no later than the earlier of (A) 10 years after the Closing Date or (B) 60 days after the expiration of the applicable statute of limitations with respect to such matters." In contrast, for environmental matters <u>within</u> the United States, the parties did not agree to include (in Section 8.4(c)(iii)) the ten year limit on the Defendant's exposure. Accordingly, in light of the apparent ambiguity, the question of what the Defendant "intended" to do is the quintessential jury issue. See St. Paul Fire & Marine Ins. Co., 322 N.C. at 83, 366 S.E.2d at 484; and Dockery, 144 N.C. App. at 422, 547 S.E.2d at 852.

In the event that the jury concluded that the disputed phrase referred to claims that the Plaintiff might bring against the Defendant for its refusal to indemnify the Plaintiff for invoices it has paid, it is clear that, at a minimum, claims related to invoices paid since December 31, 2002 (three years and 60 days prior to the Plaintiff's demand letter) would not be time barred. Accord Premier Corporation v. Economic Research Analysts, Inc., 578 F.2d 551, 554 (4th Cir. 1978) (concerning indemnification agreements, "North Carolina follows the general rule that a cause of action on an obligation to indemnify normally accrues when the indemnitee suffers actual loss"); and Duke Univ. v. St. Paul Mercury Ins., 95 N.C. App. 663, 671-72, 384 S.E.2d 36, 41 (1989) (where party has continuing contractual obligation to defend and indemnify, each of indemnified party's multiple payments triggered a separate limitation period for that payment).

Moreover, if the jury also concluded that the words "under seal" on the Agreement's signature page were more than a mere formality and that the parties intended to create a "sealed

instrument" subject to the longer ten-year limitations period, claims arising from invoices paid since December 31, 1995 (ten years and 60 days prior to the Plaintiff's demand letter) would not be time barred.  Accord  Blue Cross and Blue Shield of North Carolina v. Odell Assoc., Inc., 61 N. C. App. 350, 362, 301 S.E.2d 459, 465-66 (1983) ("the intent of the parties to create a [document subject to the longer statute of limitations] may be shown from the instrument or testimony outside the instrument, nothing else appearing"); and Central Systems v. Heating & Air Conditioning Company, 48 N.C. App. 198, 202, 268 S.E.2d 822, 824 (1980) (in the event of any ambiguity, "it is a jury question as to whether the party signed under seal").

Having concluded, therefore, that the parties' Agreement was ambiguous as to the requirement of the Notice of Claim and, if required, whether the Plaintiff's notice was timely, the undersigned must respectfully recommend that the Defendant's Motion for Judgment on the Pleadings be denied, but without prejudice to the Defendant's right to renew those arguments upon the conclusion of discovery in a Motion for Summary Judgment or at trial.

### C.  Requirement of Prejudice

Finally, even assuming arguendo that the contract was not ambiguous as to the applicability of the notice requirement and the statute of limitations, the parties expressly agreed that any failure to provide a timely Notice of Claim would bar the Plaintiff's claim only if and to the extent that the Defendant was prejudiced as a result.

In North Carolina, the existence of prejudice is a question normally reserved for the fact finder.  Richardson v. Maxim Healthcare/Allegis Group, ___ N.C. App. ___, ___, 652 S.E. 2d 3, 10 (November 6, 2007) (in workers compensation context, remanding to Industrial Commission for

findings of fact as to whether defendant employer was prejudiced by lack of notice of plaintiff employee's claim); Bond/Tec, Inc. v. Scottsdale Ins. Co., 174 N.C. App. 820, 823, 622 S.E. 2d. 165, 168 (2005) (insurer bore burden of proof on question of whether insurer was prejudiced by insured's failure to comply with provision of insurance policy, which was issue of fact to be determined upon motion for summary judgment or at trial); and Westbrooks v. Bowes, 130 N.C.App. 517, 527-29, 503 S.E.2d 409, 416-17 (1998) (remanding workers compensation case to Industrial Commission for "specific findings" on whether the employer was prejudiced by untimely notice).

The Defendant has not made any factual showing on the prejudice issue, much less offered undisputed facts sufficient at this early stage in the proceeding to establish as a matter of law that the Defendant was prejudiced by the Plaintiff's failure to give timely notice. To the contrary, the Plaintiff has alleged facts, which must be taken as true at this point, supporting its contention that the Defendant was not prejudiced by the late notice. Indeed, the Defendant twice was cited by the State for the contamination and, in response, developed a remediation plan that was in operation at the time of the stock sale. As noted above, there is no indication that the remediation at the site ever deviated from the Defendant's initial program and, accordingly, the Defendant was clearly aware of the costs the Plaintiff continued to incur after the sale.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendant's "Motion for Judgment on the Pleadings" (document #17) be **DENIED WITHOUT PREJUDICE** to the Defendant's right to renew its Motion at the conclusion of discovery.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin K. Reidinger.

**SO RECOMMENDED AND ORDERED.**

Signed: December 20, 2007

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge