**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:07cv138**

| | |
|---|---|
| **SCHRADER-BRIDGEPORT INTERNATIONAL, INC.,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **ARVINMERITOR, INC.,** ) <br> ) <br> Defendant. ) <br>  ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Judgment on the Pleadings [Doc. 17] and the Defendant's Objection [Doc. 28] to the Memorandum and Recommendation [Doc. 27] of Magistrate Judge Carl Horn, III, recommending the denial of that motion.

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Defendant's Motion for Judgment on the Pleadings [Doc. 17] was referred to the Magistrate Judge for disposition or for a recommendation of disposition, as may be appropriate. On December 20, 2007, the Magistrate Judge entered a Memorandum and Recommendation [Doc. 27], recommending that the Defendant's Motion for

Judgment on the Pleadings [Doc. 17] be denied without prejudice to the Defendant's right to renew the motion at the conclusion of discovery.  The Defendant filed a timely Objection [Doc. 28] to the Magistrate Judge's Recommendation [Doc. 27] on January 14, 2008, and the Plaintiff, after seeking an extension of time from the Court, filed a Response [Doc. 32] to the Defendant's Objection on February 4, 2008.

For the reasons set forth below, the Defendant's Objection [Doc. 28] to the Magistrate Judge's Recommendation [Doc. 27] is **OVERRULED**, the Magistrate Judge's Recommendation [Doc. 27] is **ADOPTED**, and the Defendant's Motion for Judgment on the Pleadings [Doc. 17] is **DENIED.**

## I.     Factual Background and Procedural History

### A.     Plaintiff's Allegations

Taking all of the allegations in the Plaintiff's Complaint as true, the following are the relevant facts.  On February 15, 1995, Arvin Industries ("Arvin") and KSCH Holdings, Inc. ("KSCH") entered into a Stock Purchase Agreement, pursuant to which Arvin agreed to sell 100% of the outstanding capital stock of its subsidiary, Schrader Automotive Inc., to KSCH.[1]

---

[1] The day after the Stock Purchase Agreement was executed, KSCH merged with Schrader Automotive Inc.  [Id. at ¶8].  Subsequently, Schrader Automotive Inc. merged with Bridge Products, Inc., with the Plaintiff Schrader-Bridgeport International, Inc. ("SBI") as the surviving corporation.  [Id. at ¶9].  Thus, the Plaintiff SBI is a successor by

2

[Complaint, Doc. 1 at ¶6]. As part of the Stock Purchase Agreement, KSCH acquired a leasehold interest in a manufacturing facility leased and operated by Schrader Automotive Inc. in Monroe, North Carolina (the "Monroe Facility"). [Id. at ¶7].

Petroleum hydrocarbon contamination and chlorinated solvent contamination were present at the Monroe Facility when the Stock Purchase Agreement was executed, and such contamination was identified and included in the list of "Known Environmental Violations" set forth in Schedule 4.8 of the Stock Purchase Agreement. [Id. at ¶18 and Schedule 4.8 of Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint].

Pursuant to Section 6.10(b) of the Stock Purchase Agreement, Arvin agreed to assume responsibility for the remediation of the "Known Environmental Violations" identified in the Stock Purchase Agreement. Specifically, Section 6.10(b) of the Stock Purchase Agreement provides, in pertinent part, as follows:

---

merger to the rights and responsibilities of KSCH and Schrader Automotive Inc. under the Stock Purchase Agreement. [Id. at ¶10]. Arvin subsequently merged with Meritor Automotive Inc., with the Defendant ArvinMeritor, Inc. ("ArvinMeritor") as the surviving corporation. [Id. at ¶11]. Thus, the Defendant ArvinMeritor is the successor by merger to the rights and responsibilities of Arvin under the Stock Purchase Agreement. [Id.].

> (b) <u>Remediation of Known Environmental Violations</u>. Seller[2] agrees that it shall assume, at its sole expense, the responsibility for (i) remediating or bringing into compliance with all Environmental Regulations, all violations of Environmental Regulations by the Company or any Subsidiary known by Seller, the Company or any Subsidiary as of the Closing[3] (referred to in this Section as "Known Environmental Violations"), including without limitation, those Environmental Violations described on <u>Schedule 4.8</u> . . . .

[Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint at 60].

Article VIII of the Stock Purchase Agreement, entitled "Indemnification," provides, in pertinent part, as follows:

> Section 8.1 <u>Indemnification by Seller</u>. Seller hereby agrees that it will indemnify, defend and hold harmless Holdings and Purchasers, the Company or any Subsidiary from and against any and all Loss incurred by any of them arising out of:
>
>    \*  \*  \*
>
> (f) the Known Environmental Violations described in Section 6.10(b); and
>
> (g) (i) the Environmental Regulations in effect on or prior to the Closing Date, if such Loss also arises out of facts, conditions or events occurring or existing on or prior to the Closing Date that relate to

---

[2] Within the Stock Purchase Agreement, Arvin is referred to as the "Seller"; Schrader Automotive Inc. is referred to as the "Company"; and KSCH is referred to as "Holdings" and as a "Purchaser."

[3] The Closing occurred on February 15, 1995. [Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint at 3, 62].

4

>    the Real Property, the Leased Real Property or the
>    operations of the Company or the Subsidiaries; and
>    (ii) without limiting the generality of the foregoing,
>    any violation of any Environmental Regulations in
>    effect on or prior to the Closing Date that occurs or
>    occurred on or prior to the Closing Date; provided,
>    however, that in either (i) or (ii) above, if such facts,
>    conditions, events or violations also occur or exist
>    after the Closing Date, then Seller's obligation to
>    indemnify Holdings under this subsection shall be
>    limited to Seller's pro rata share of such Loss, such
>    share to be calculated as (i) the total time that such
>    facts, conditions, events or violations existed on or
>    prior to the Closing [D]ate divided by (ii) the total
>    time such facts, conditions, events or violations
>    occurred or existed.  For purposes of (ii) in the
>    foregoing sentence, "the total time existed" shall be
>    deemed to end on the date on which Holdings
>    provides Seller with a Notice of Claim in respect of
>    the Loss arising from or corresponding to such
>    facts, conditions, events or violations.

[Stock Purchase Agreement, Ex. 1 to Doc. 1 at 67-68].  Section 8.2 of the Stock Purchase Agreement defines the term "Loss" as "the amount of any loss, liability, damage, deficiency, obligation, penalty, settlement of any nature, interest or other carrying cost, cost or expense ... incurred by the Indemnified Party ...."  [Id. at 68].

The Plaintiff alleges that since the execution of the Stock Purchase Agreement, the Plaintiff has incurred significant cost and expenses, in the amount of at least $697,120.00, in remediating the contamination at the

5

Monroe Facility, and the Plaintiff anticipates incurring additional costs and expenses in the future. [Complaint, Doc. 1 at ¶¶19-20]. The Plaintiff alleges that these costs and expenses are "Losses arising out of the Known Environmental Violations and arising out of the Environmental Regulations in effect on or prior to the Closing Date . . . ." [Id. at ¶21].

On February 28, 2006, the Plaintiff sent written correspondence to the Defendant demanding (1) that the Defendant assume, at its sole expense, the responsibility for remediating the environmental contamination at the Monroe Facility, including complying with all requirements of the State of North Carolina with respect thereto; and (2) that the Defendant indemnify and reimburse the Plaintiff for all past and future Loss incurred in remediating the contamination as required by the State of North Carolina. [Complaint, Doc. 1 at ¶22]. The Defendant refused to indemnify the Plaintiff, [id. at ¶ 23], and the Plaintiff filed this present action on March 30, 2007.

In its Complaint, the Plaintiff asserts three causes of action. First, the Plaintiff asserts that the Defendant breached Sections 6.10(b), 8.1(f) and 8.1(g) of the Stock Purchase Agreement, causing the Plaintiff damages in excess of $697,120.00. [Id. at ¶¶24-27]. Second, the Plaintiff

makes a claim for contractual indemnification pursuant to 8.1(f) and 8.1(g) of the Stock Purchase Agreement. [Id. at ¶¶28-34]. Third, the Plaintiff seeks a declaratory judgment to the effect that: (1) the Defendant breached its obligations under Section 6.10(b) of the Stock Purchase Agreement by failing to assume responsibility for remediating the Known Environmental Violations at the Monroe Facility; (2) the Defendant breached its obligations in Sections 8.1(f) and 8.1(g) of the Stock Purchase Agreement by refusing to indemnify the Plaintiff for any and all Loss incurred as a result of the Known Environmental Violations at the Monroe Facility; (3) the Defendant is obligated to remediate the contamination at the Monroe Facility pursuant to Section 6.10(b) of the Stock Purchase Agreement and that the Plaintiff is entitled to indemnification from the Defendant pursuant to Sections 8.1(f) and 8.1(g) of the Stock Purchase Agreement; and (4) the Defendant is liable for all Loss and damages incurred by the Plaintiff in the future as a result of the contamination at the Monroe Facility. [Id. at 7].

### B. Motion for Judgment on the Pleadings

On August 28, 2007, the Defendant filed a Motion for Judgment on the Pleadings [Doc. 17], asserting that neither the filing of this action nor the Plaintiff's notice of loss to the Defendant was timely.

First, the Defendant argues that the Plaintiff's claims for indemnification are barred by Section 8.4(c) of the Stock Purchase Agreement and that Plaintiff's claims for breach of contract are simply a restatement of the indemnity claim and thus time barred as well. [Defendant's Memorandum in Support of Motion for Judgment on the Pleadings, Doc. 18 at 8]. That Section of the parties' contract provides, in pertinent part, as follows:

> Section 8.4 <u>Limitation of Seller's Liability</u>. Notwithstanding any provision of this Agreement to the contrary, except in the case of actual common law fraud on the part of Seller, Seller's liability to Holdings, Purchasers, the Company or any Subsidiary for indemnification under this Article VIII shall be limited as follows:
> 
> \*     \*     \*
> 
> (c) <u>Time Limit for Indemnity Claims</u>. Seller shall not have any liability for any Loss otherwise indemnifiable by Seller hereunder with respect to which a Notice of Claim has not been given to Seller prior to 30 months after the Closing Date, except with respect to ... (iii) ... an Indemnity Claim under Section 8.1(f) or (g) pertaining to environmental matters in the U.S., in which case

> the **Notice of Claim must have been given no later than 60 days after the expiration of the applicable statute of limitations with respect to such matters** ... (v) an Indemnity Claim under Sections 8.1(e) and (f), in which case the **Notice of Claim must have been given no later than 60 days after the expiration of the applicable statute of limitations ....**

[Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint, at 71-72] (emphasis added). The Defendant argues that Plaintiff's cause of action accrued no later than March 1995, when Plaintiff began remediating the contamination, because all of the alleged environmental contaminants upon which the Plaintiff bases its claim for indemnification were disclosed and known at the time that the Stock Purchase Agreement was entered. Therefore, the Defendant argues, Plaintiff's February, 2006 notice was more than 60 days beyond the expiration of any possible statute of limitations.[4]

---

[4] The Stock Purchase Agreement provides that Illinois law governs the construction, interpretation and enforcement of the parties' agreement. [Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint at 77]. Nevertheless, both parties agree that North Carolina law provides the statutes of limitations applicable to the Plaintiff's claims. [Defendant's Memorandum in Support, Doc. 18 at 7; Plaintiff's Response, Doc. 20 at 7-8]. The Defendant argues that the "applicable statute of limitations" referenced in Section 8.4 is the three-year statute of limitations applicable to claims for alleged environmental contamination and property damage under North Carolina law. See N.C. Gen. Stat. ¶ 1-52(16). [Defendant's Memorandum in Support of Motion for Judgment on the Pleadings, Doc. 18 at 8]. The Plaintiff argues, on the other hand, that the applicable statute of limitation under North Carolina law is either the ten-year statute for claims arising from a sealed instrument, see N.C. Gen. Stat. §

The Plaintiff agues in response that the statute of limitation applicable to the Plaintiff's indemnity claims began to run not when the Stock Purchase Agreement was executed (and the environmental contamination disclosed), but rather each time that the Plaintiff expended funds to address the environmental contamination. [Plaintiff's Memorandum in Opposition, Doc. 20 at 2]. The Plaintiff further argues that because the "underlying claim" for which it seeks indemnity is the State of North Carolina's claim against the Plaintiff for remediation of the contamination, and there is no statute of limitations applicable to such claims by the State, there are accordingly no time limitations that bar the Plaintiff's environmental indemnity claims against the Defendant. [Id. at 2-3]. With respect to the Plaintiff's breach of contract claim, the Plaintiff asserts that the cause of action accrued and the statute of limitations began to run when the Defendant refused to assume responsibility for the remediation in February, 2006. [Id.].

---

1-47(2), or the three-year statute for breach of contract claims not arising from a sealed instrument, see N.C. Gen. Stat. § 1-52(1). [Plaintiff's Memorandum in Opposition, Doc. 20 at 2]. At this stage in the proceedings, the Court need not decide which statutes of limitations are applicable to the Plaintiff's claims.

Second, the Defendant argues that the Plaintiff failed to give prompt notification of its indemnification claim as required by Section 8.3(a) of the Stock Purchase Agreement, which provides, in pertinent part, as follows:

> Section 8.3  Indemnity Claim by Indemnified Party.
>
> (a)  Notice of Claim.  If any matter shall arise which, in the opinion of the Indemnified Party, constitutes or may give rise to a Loss subject to indemnification by the Indemnifying Party as provided herein (an "Indemnity Claim"), the Indemnified Party shall give prompt written notice (a "Notice of Claim") of such Indemnity Claim to the Indemnifying Party setting forth the relevant facts and circumstances of such Indemnity Claim in reasonable detail and the amount of indemnity (to the extent the Indemnified Party can determine such amount) sought from the Indemnifying Party with respect thereto.  **The Indemnified Party's failure to notify the Indemnifying Party of any such matter within the time frame specified shall not release the Indemnifying Party, in whole or in part, from its obligations hereunder except to the extent that the Indemnified Party's ability to defend such claim is prejudiced thereby.**

[Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint at 69] (emphasis added).  As a result of the Plaintiff's failure to provide prompt notice, the Defendant argues that its "rights have been irreparably prejudiced" in that it "was not only denied the opportunity to participate in the defense of those claims and the remediation decisions, but considering remediation has

been ongoing for the past eleven years, ArvinMeritor has, in fact, been foreclosed from any involvement." [Defendant's Memorandum in Support of Motion for Judgment on the Pleadings, Doc. 18 at 11, 12].

In response, the Plaintiff argues that the Defendant clearly had notice of the existing contamination and the State's remediation claim at the time that the Stock Purchase Agreement was executed. [Plaintiff's Memorandum in Opposition, Doc. 20 at 3]. Further, the Plaintiff contends that the Defendant suffered no prejudice because it already knew that it would be responsible for the cleanup of the contamination. [Id.]. In any event, the Plaintiff argues, whether the Defendant received adequate notice or was prejudiced are fact issues which preclude dismissal at this stage in the litigation. [Id.].

**C. Magistrate Judge's Recommendation**

Upon review of the parties' pleadings, and applying general principles of contract interpretation, the Magistrate Judge concluded that the operative language in Section 8.4(a) of the Stock Purchase Agreement is ambiguous, as this Section "could be read to require the Plaintiff to forward each invoice to the Defendant as it was received by the Plaintiff, or to support the Plaintiff's contrary contention that remediation about which the

Defendant was already fully aware was exempted from this requirement." [Memorandum and Recommendation, Doc. 27 at 8-9]. Similarly, the Magistrate Judge found that Section 8.4(c)(iii) of the Stock Purchase Agreement is ambiguous as to which "environmental matters" the parties intended to trigger the "applicable statute of limitations." [Id. at 9]. Finally, the Magistrate Judge concluded that, even if these Sections of the Stock Purchase Agreement are not ambiguous, the issue of whether the Defendant was prejudiced by the Plaintiff's lack of prompt notice, as required by Section 8.3, is a factual issue which must be determined by a jury. [Id. at 11-12]. For these reasons, the Magistrate Judge recommended that the Defendant's Motion for Judgment on the Pleadings be denied without prejudice with the Defendant's right to renew the same at the conclusion of discovery. [Id. at 12].

The Defendant filed a timely Objection [Doc. 28] to the Magistrate Judge's Memorandum and Recommendation [Doc. 27], and this matter is now ripe for review.

## II. Standard of Review

A party may file written objections to the Magistrate Judge's memorandum and recommendation within ten days after being served with

a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert. denied, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

In considering a motion for judgment on the pleadings, the Court applies the same standard for motions made pursuant to Rule 12(b)(6). Burbach Broadcasting Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197, 114 S.Ct. 1307,

127 L.Ed.2d 658 (1994). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts of consistent with the allegations in the complaint." Id. at 1969. A complaint will survive a Rule 12(b)(6) motion to dismiss if it sets forth "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

### III. Analysis

The majority of the Defendant's Objection [Doc. 28] merely restates the arguments asserted in the Defendant's briefs [Docs. 18, 21] filed in support of its Motion for Judgment on the Pleadings [Doc. 17], and with the exception of one objection discussed in greater detail below, the Defendant fails to assign any specific error to the Magistrate Judge's findings and conclusions. The Court is not obligated to conduct a *de novo* review of those portions of Memorandum and Recommendation [Doc. 27] to which no specific objection has been made. See Thomas, 474 U.S. at 150, 106 S.Ct. at 472; Orpiano, 687 F.2d at 47.

The only specific objection that the Defendant makes is that the Magistrate Judge erred in concluding that the "prompt notice" requirement stated in Section 8.3 of the Stock Purchase Agreement applies to the temporal limitation on the Defendant's liability for indemnification set forth in Section 8.4. The Defendant argues that in so doing, the Magistrate Judge disregarded the first portion of Section 8.4, which states, in pertinent part, that "[n]otwithstanding any provision of this Agreement to the contrary, ... Seller's liability ... for indemnification under this Article VIII shall be limited as follows ...." [Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint at 71]. The Defendant argues that the language of the Stock Purchase Agreement does not support the Magistrate Judge's conclusion that regardless of which statute of limitation applies, this temporal limitation would bar the Plaintiff's claim "only if and to the extent that the Defendant was prejudiced as a result." [Defendant's Objections, Doc. 28 at 20-21 (quoting Memorandum and Recommendation, Doc. 27 at 11)].

The Court concludes that the Magistrate Judge was correct in his interpretation of these two provisions of the parties' contract. While Section 8.3 of the Stock Purchase Agreement requires the Plaintiff to give the Defendant "prompt written notice" of an indemnity claim, it also

provides that the Plaintiff's failure to give such notice "*within the time frame specified* shall not release the [Defendant], in whole or in part, from its obligations hereunder except to the extent that the [Defendant's] ability to defend such claim is prejudiced thereby." [Stock Purchase Agreement, Doc. 1-3, Ex. 1 to Complaint at 69] (emphasis added). The "time frame specified" for indemnity claims is set forth in Section 8.4(c). Thus, the Magistrate Judge correctly concluded that the prejudice exception in Section 8.3 applies to the time limitation for bringing an indemnity claim as set forth in Section 8.4. To construe these provisions otherwise would be to render the prejudice exception in Section 8.3 essentially a nullity. It is well-settled under Illinois law that "[i]n construing a contract, it is presumed that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." Mayfair Construction Co. v Waveland Associates Phase I Ltd. P'ship, 249 Ill.App.3d 188, 200, 619 N.E.2d 144, 152, app. denied, 153 Ill.2d 561, 624 N.E.2d 809 (1993); see also Lincoln Logan Mut. Ins. Co. v. Fornshell, 309 Ill. App.3d 479, 484, 722 N.E.2d 239, 242 (1999) ("Whenever possible, courts should construe a contract so that different provisions are harmonized and not conflicting with one another."), app.

denied, 192 Ill.2d 691, 742 N.E.2d 329 (2000). As the Magistrate Judge correctly noted, the Plaintiff has alleged sufficient facts, which if taken as true, support its contention that the Defendant was not prejudiced by the Plaintiff's untimely notice of its indemnity claims, and further, "[t]he Defendant has not made any factual showing on the prejudice issue, much less offered undisputed facts sufficient at this early stage in the proceeding to establish as a matter of law that the Defendant was prejudiced by the Plaintiff's failure to give timely notice." [Memorandum and Recommendation, Doc. 27 at 12]. The Court will, therefore, overrule this Objection of the Defendant.

Upon review of the Defendant's Motion [Doc. 17], and the pleadings as a whole, the Court determines that the Recommendation [Doc. 27] of the Magistrate Judge reaches the correct result.[5]

## IV. Conclusion

For the reasons stated herein, the Court hereby accepts the Magistrate Judge's Recommendation [Doc. 27] that the Motion for

---

[5]Because the Magistrate Judge was correct in concluding that the Plaintiff has pled sufficient facts to establish that the Defendant was not prejudiced by the Plaintiff's failure to provide timely notice of its indemnification claims, the Court need not address the Magistrate Judge's alternative grounds for recommending denial based on Sections 8.3 and 8.4 of the Stock Purchase Agreement being ambiguous.

Judgment on the Pleadings [Doc. 17] filed by the Defendant ArvinMeritor, Inc. should be denied.

**IT IS, THEREFORE, ORDERED** that the Defendant ArvinMeritor, Inc.'s Motion for Judgment on the Pleadings [Doc. 17] is **DENIED**.

**IT IS SO ORDERED.**

Signed: April 9, 2008

Martin Reidinger
United States District Judge